### Bob Howell *v.* The State.

1. Verdict — Arrest of Judgment.— " We the jury find the defendant guilty of a misdemeanor, and assess his punishment at one hundred dollars," is a verdict entirely insufficient to support a judgment, and a motion in arrest based thereon should prevail.
2. Practice — New Trial.— See the opinion *in extenso*, and general summary for condition of evidence that would warrant the granting of a new trial in order to give the defendant the benefit of the testimony of a co-defendant acquitted subsequently to defendant's conviction.

Appeal from the District Court of Parker.   Tried below before the Hon. A. J. Hood.

The indictment was for theft of cattle belonging to J. W. Wylie, the defendant being charged in connection with William Howell. The conviction was for misdemeanor; the verdict rendered, upon which the principal question arises, being in words as set out in the opinion. William Howell was subsequently acquitted, and as the evidence in this case is of such character that it is held sufficient to warrant a new trial to afford the defendant an opportunity of producing the testimony of a co-defendant who was acquitted subsequent to his conviction, a brief summary is appended.

J. W. Wylie testified that, between the 1st and 10th of October, 1879, he was informed by Mr. Dillingham that the Howell boys had driven a bunch of cattle by his house, including a black heifer eighteen months old, the property of witness. The witness, missing the heifer, went in search of it, and on the second day found the herd on Pinnell prairie, and near it his heifer and two speckled cows that had run with it on the range. These three animals were feeding off from the herd, which numbered some two hundred head. The witness asked Wm. Howell if the herd was his, and, on being answered affirmatively, said nothing about the heifer to Howell, but rode back and lodged complaint against the Howell boys, for theft of the heifer, the cows and a red steer. On the next day witness visited the herd with a constable, who arrested Wm. Howell. The witness then told him that the black heifer was his, and Wm. Howell said that he did not claim it, that it had followed the herd, though himself and his brother Bob, this defendant, had attempted to keep it from following. He then ordered one of his hands to assist in "cutting" it out of the herd. Wm. Howell had no horse, but after much difficulty witness, the hand, and McFall, the constable, cut the heifer out of the herd, and witness drove it home without much trouble,

a distance of some seven or eight miles. He had not given the Howells permission to drive off the yearling.

Robt. Dillingham testified that, about the 1st of October, 1879, himself and his son were standing in his house yard when the defendant and his brother William passed by driving several head of cattle, including the heifer belonging to the witness Wylie, and other cattle that witness recognized as the property of other neighbors, and two or three estrays. He notified the witness Wylie. This witness was corroborated by his son, who, however, did not distinguish the heifer in question among the cattle driven by the Howells past the house. McFall, the constable who accompanied Wylie to the herd and arrested Wm. Howell, gave about the same account as Wylie of what transpired at the herd,—adding that defendant was not there at the time, but afterwards came in and gave himself up.

Mose Bonner, for the defense, testified that he saw the Howells and one or two hands on the prairie, about the 1st of October, 1879, driving a small bunch of cattle. The black heifer was following the bunch, about fifty yards behind. He saw Wm. Howell turn back and drive the yearling several hundred yards southerly, in the direction of Dillingham's house, and then return to defendant and the bunch of cattle, traveling in a westerly direction.

Newton Butler testified that he rode up on the Howells in Pinnell prairie some time in September or October, 1879. They were driving a bunch of cattle. After riding some distance the witness noticed a black heifer coming up towards the herd from an east course. Wm. Howell remarked, "There comes that d—d yearling; it has followed us from Willow creek, and I have driven it back three or four times. If you will help, we will 'scoot' it back again." Witness assisted in driving it back near a half mile, and then left the parties.

James Savage testified, for the defense, that after the Howells had driven several head of cattle to their herd, he saw a black heifer come up and join the herd, and on request assisted in cutting it out, and in driving it off about a quarter of a mile. The Howells told witness that the heifer had followed them all the way from Willow creek.

Sam Shadle testified, for the defense, that a few days after he heard that the Howell boys had got into trouble about the heifer, he went to their herd to get some cattle he heard they had driven up for him, but found they had left the herd. This defendant went with witness to the range from which the cattle were driven by them, and found witness' cattle (the same previously driven by and which had escaped from the Howells) in company with a black heifer. They started with witness' cattle, and the heifer followed. The witness drove it back once or twice, and then got a bush and clubbed it back. This witness stated that yearlings were often exceedingly troublesome to separate from cattle with which they ran. He had, prior to this trouble, employed the Howells to drive up any of his cattle they might find for him, and this authority to them was general.

A new trial being refused, the defendant appeals.

*Shannon & Moran*, for the appellant.

*Horace Chilton*, Assistant Attorney General, for the State.

WHITE, P. J. William Howell and Bob Howell, this appellant, were jointly indicted for the theft of a yearling. A severance was had at the trial, upon application of this appellant, and he was first placed upon trial and convicted. Subsequently William Howell was tried and acquitted.

After the return of the verdict in this case defendant made a motion in arrest of judgment upon the ground that the verdict was insufficient to support a judgment. The verdict was: "We the jury find the defendant guilty of a misdemeanor, and assess his punishment at one hundred dollars." Such a verdict was held clearly insufficient in *Senterfeit* v. *State*, 41 Texas, 188, where it was said "it does not sufficiently appear that the misdemeanor of which the jury find the defendant guilty is that charged in the indictment." Upon the authority of that case the court erred in overruling the motion to arrest the judgment.

This court is further of opinion that, in view of the meagreness of the inculpatory evidence adduced against the defendant, a new trial should have been awarded him in order that he might have had the benefit of the testimony on another trial of his co-defendant, William Howell, who had been tried for the same offense and had been acquitted subsequent to appellant's conviction.

The judgment is reversed and the cause remanded for a new trial.

*Reversed and remanded.*